IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

SARAH E. MENSINGER PLAINTIFF

V. Case No. 3:25-CV-00294-LPR-BBM

FRANK BISIGNANO, Commissioner,
Social Security Administration DEFENDANT

**RECOMMENDED DISPOSITION**

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Lee P. Rudofsky. Either party may file written objections to this Recommendation. Any objection should be specific and should include the factual and/or legal basis for the objection. To be considered, objections must be received in the office of the Court Clerk within 14 days. If no objections are filed, Judge Rudofsky can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

## I. INTRODUCTION

Sarah Mensinger applied for Title II disability insurance benefits and Title XVI supplemental security income on January 24, 2024. (Tr. at 174, 383, 389). She alleged disability beginning December 10, 2023. *Id*. at 174. Her claim was denied both initially and upon reconsideration, and she requested a hearing before an Administrative Law Judge ("ALJ"). *Id*. at 213–14, 227, 234. Following a telephone hearing on February 26, 2025, *id*. at 192–212, the ALJ concluded that Mensinger was not disabled. *Id*. at 174–85. Mensinger requested review, and on October 23, 2025, the Appeals Council found there was no basis

for changing the ALJ's decision. *Id.* at 1.[1] The ALJ's decision now stands as the final decision of the Commissioner, and Mensinger requests judicial review, submitting four points of error. For the reasons set forth below, the Court recommends that the decision of the Commissioner be affirmed.

## II. THE COMMISSIONER'S DECISION

At step one of the sequential five-step analysis, the ALJ found that Mensinger had not engaged in substantial gainful activity since December 10, 2023—the alleged onset date of disability. (Tr. at 177).[2] At step two, the ALJ identified the following severe impairments: facet joint arthritis of the lumbar spine, obesity, major depressive disorder, and generalized anxiety disorder. *Id.* After finding at step three that none of Mensinger's impairments or combination of impairments met or medically equaled a listed impairment,

[1] Mensinger provided supplemental evidence to the Appeals Council on review. (Tr. at 2). The Appeals Council found that records from St. Bernards Medical Center dated June 15, 2024, to January 16, 2025, did not show a reasonable probability of changing the outcome of the decision and that records from St. Bernards dated May 29, 2025, through June 16, 2025, did not relate to the period at issue and did not affect the disability determination. *Id.* Although Mensinger makes no argument on appeal related to this additional evidence, this Court acknowledges that, in cases involving the submission of supplemental evidence after the ALJ's decision, the record includes the evidence submitted after the hearing. *See Jenkins v. Apfel*, 196 F.3d 922, 924 (8th Cir. 1999) (citing *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994)); *see also Browning v. Sullivan*, 958 F.2d 817, 823 n. 4 (8th Cir. 1992) (additional evidence submitted to Appeals Council following ALJ decision becomes part of administrative record for judicial review). "When the Appeals Council denies review of an ALJ's decision after reviewing new evidence," the Court does not "'evaluate the Appeals Council's decision to deny review'" but rather determines "'whether the record as a whole, including the new evidence, supports the ALJ's determination.'" *McDade v. Astrue*, 720 F.3d 994, 1000 (8th Cir. 2013) (quoting *Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000)).

[2] Using a five-step sequence, the ALJ determines: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

*id.* at 177–79, the ALJ determined that Mensinger had the residual functional capacity ("RFC") to perform light work, except that she could: only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs; never climb ladders, ropes, or scaffolds; understand, remember, and carry out simple instructions; and make simple work-related decisions. *Id.* at 179–84. The ALJ found that Mensinger had no past relevant work and that there were jobs existing in significant numbers in the national economy that she could perform; as a result, the ALJ concluded that Mensinger was not disabled. *Id.* at 184–85.

## III. DISCUSSION

### A. Standard of Review

"In reviewing the ALJ's decision," the Court "examine[s] whether it is supported by substantial evidence on the record as a whole and whether the ALJ made any legal errors." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). "Substantial evidence is that which a 'reasonable mind might accept as adequate to support a conclusion,' whereas substantial evidence on the record as a whole entails 'a more scrutinizing analysis.'" *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted). "Our review 'is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . . [W]e also take into account whatever in the record fairly detracts from that decision.'" *Gann v. Berryhill*, 864 F.3d 947, 950–51 (8th Cir. 2017) (citation omitted). "Reversal is not warranted, however, 'merely because substantial evidence would have supported an opposite decision.'" *Reed*, 399 F.3d at 920 (citation omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted).

**B. Mensinger's Arguments for Reversal**

Mensinger raises four challenges to the ALJ's opinion, including that the ALJ (1) failed to fully and fairly develop the record, (Doc. 7 at 5–13); (2) erred at step two by failing to discuss Mensinger's diabetic polyneuropathy, deep vein thrombosis ("DVT"), and her lower-extremity issues related to her pulmonary embolism, *id.* at 13–14; (3) did not comply with *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), in evaluating Mensinger's subjective complaints, (Doc. 7 at 14–16); and (4) erred in formulating the RFC. *Id.* at 16–18. For the reasons stated below, the Commissioner's decision should be affirmed.

**1. The record was sufficiently developed.**

Mensinger first argues that the ALJ failed to fully and fairly develop the record. (Doc. 7 at 5–13). Specifically, Mensinger contends that the ALJ's decision that Mensinger could perform light work with some restrictions is unsupported because the record lacked a recent medical opinion evaluating her functional capacities. *Id.* at 6–7. Furthermore, Mensinger claims that, without a recent consultative examination, there was insufficient evidence for the ALJ to determine her physical or mental RFC. *Id.* at 7–8. According to

Mensinger, the ALJ had to rely on his own inferences based on the medical records—essentially "play doctor"—to find that Mensinger could perform light work and mentally function in the workplace. *Id*. at 8–9. Mensinger's argument is unavailing.

"Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quoting *Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008), and *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citing *Myers v. Colvin*, 721 F.3d 521, 526–27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092–93 (8th Cir. 2012)). Rather, the RFC should be "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Id.* (quoting *Myers*, 721 F.3d at 527); *see also Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir. 2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved *only* by medical evidence, we disagree."). "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022) (quoting *Cox v. Astrue*, 496 F.3d 614, 619–20 (8th Cir. 2007)); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a) ("We will assess your residual functional capacity based on all the relevant evidence in your case record.").

It is only when the medical records fail to provide sufficient evidence for assessing disability that an ALJ is required to order further medical examinations or testing. *Martise*

*v. Astrue*, 641 F.3d 909, 926–27 (8th Cir. 2011) (citing *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010)); *see also Noerper v. Saul*, 964 F.3d 738, 746 (8th Cir. 2020) (an ALJ is not required to obtain a functional description from medical professionals "that wholly connects the dots between the severity of pain and the precise limits on a claimant's functionality"). Where there is a lack of evidence in the record regarding functional limitations or where the ALJ is presented with conflicting medical opinions and fails to articulate his evaluation of those opinions, remand may be appropriate for further development. *See Noerper*, 964 F.3d at 747 (citing *Combs*, 878 F.3d at 646).

The heart of Mensinger's argument is that, without a recent consultative examination, the ALJ could not assess her physical or mental functioning for purposes of crafting an RFC. *See* (Doc. 7 at 8) ("In other words, there must be some opinion evidence."). Here, none of the state agency medical consultants at the initial determination or reconsideration stages issued an opinion as to Mensinger's physical or mental functioning due to her "failure to cooperate." (Tr. at 217–18, 230–31).[3] The ALJ found the opinion of Holli Shelton, LPC, Mensinger's treating provider for mental-health counseling, unpersuasive. *Id*. at 183. And although the ALJ was partially persuaded by the opinions of Anne Kantor, M.A., and Frederick T. Sulier, Ed.D, who performed a consultative

[3] It was noted at both the initial and reconsideration stages that Mensinger did not return questionnaires regarding her pain or activities of daily living, and she missed two scheduled consultative mental-health examinations. (Tr. at 217–18, 230–31). The record also reflects that mail intended for Mensinger (that had been sent to the wrong P.O. Box address) was returned to the Social Security Administration. *Id*. at 290–310, 482–509. However, none of the mail that was returned included questionnaires or the scheduling of consultative examinations, and the returned mail was dated well after the initial and reconsideration determinations. *Id*. Moreover, it appears that the returned mail was also sent to Mensinger's counsel. *Id*.

psychological examination and intelligence testing of Mensinger, *id*. at 183, that examination was performed in 2014. *Id*. at 562–69.

Even though an ALJ has a basic duty to develop a reasonably complete record, *Clark v. Shalala*, 28 F.3d 828, 830–31 (8th Cir. 1994), Mensinger is mistaken in suggesting that an ALJ must have a medical opinion to determine a claimant's RFC. In *Bonham v. Bisignano*, 177 F.4th 934 (8th Cir. 2026), the Court of Appeals for the Eighth Circuit recently reaffirmed its position that medical *opinion* evidence is not required to formulate an RFC. In *Bonham*, the ALJ rejected the only medical opinion in the record and based the RFC on other medical evidence. *Id*. at 940. The Court noted:

> Bonham argues that an RFC determination may not be based on inferences drawn from "objective medical data (e.g., clinical examinations, diagnostic imaging)." There must be "medical evidence," which he defines as a "medical professional's opinion," such as PA Keller's, "regarding Bonham's ability to function in the workplace" -- what he calls "functional evidence." This argument is directly contrary to § 404.1545(a)(3) and has no direct support in the cases he cites. The notion that there is no "functional evidence" in Bonham's extensive medical records is ludicrous. For example, during PA Keller's examination, Bonham claimed that he was not able to walk or stand, a claim he repeated at the hearing; Keller rejected this claim because Bonham did both at the evaluation. Consistent with § 404.1545(a)(3), the ALJ properly "assess[ed Bonham's] residual functional capacity based on all of the relevant medical and other evidence."
>
> * * *
>
> Properly understood, Noerper and Lauer reiterate our *actual* "long-held" position that an RFC must be based on some reliable medical evidence about the claimant's ability to function in the workplace, not that the evidence must be functional in-and-of-itself. Read in conjunction, these fact-intensive precedents establish no categorical rule regarding functional evidence.

*Id*. at 941–42. As explained in *Bonham*, where the RFC is based on "some reliable medical evidence about the claimant's ability to function in the workplace," the ALJ has complied with the law. *Id*. at 942.

In this case, the ALJ had Mensinger's medical records relating to both her physical and mental health (prior to and during the relevant period), medical opinion evidence, and Mensinger's testimony at the hearing about her pain and limitations. (Tr. at 177–84). Despite finding "little evidence of back pain in her medical record," *id*. at 183, the ALJ—taking Mensinger's obesity into account—assigned light-duty work with postural restrictions for balancing, stooping, kneeling, crouching, crawling, and climbing ramps, stairs, ladders, ropes, or scaffolds. *Id*. at 179–84; *see id*. at 183 ("she did not receive care for her lower back until approximately one month before the hearing, at which time she exhibited normal strength and imaging showed minimal hypertrophic changes, and following which providers indicated her condition was stable and well controlled with medication"). Based on the record, the ALJ had sufficient evidence to assess Mensinger's physical impairments and corresponding limitations without a consultative examination.

To address Mensinger's mental impairments, the ALJ restricted Mensinger to understanding, remembering, and carrying out simple instructions and making simple work-related decisions. *Id*. at 183. In support, the ALJ cited Mensinger's counseling sessions with Holli Shelton and other examinations during which Mensinger exhibited normal grooming and hygiene, calm and cooperative demeanor, normal speech, and intact memory and concentration. *Id*. at 182–83.

To the extent Mensinger claims that the ALJ could not assess her mental functioning without a more recent mental consultative examination, the record indicates that efforts to conduct an examination were thwarted *by Mensinger*. *See, e.g.* (Tr. at 182) ("the record in section E of the folder reflects repeated efforts on the part of DDS in scheduling consultative mental examinations for the claimant . . . which the claimant failed to attend"). Mensinger "bears a heavy burden in showing the record has been inadequately developed. [She] must show both a failure to develop necessary evidence and unfairness or prejudice from that failure." *Combs v. Astrue*, 243 F. App'x 200, 204 (8th Cir. 2007) (citing *Haley v. Massanari*, 258 F.3d 742, 749–750 (8th Cir. 2001)). Mensinger can't fail to show up for a consultative examination and then claim prejudice because the examination wasn't performed. Overall, this Court is satisfied that the record was developed adequately and that the ALJ's decision is based on reliable medical evidence of Mensinger's physical and mental functioning.

**2. The ALJ did not err at step two.**

Mensinger claims that the ALJ erred at step two because he did not discuss her diabetic polyneuropathy, DVT, or her "lower extremity problems that accompanied [her] dual pulmonary embolisms." (Doc. 7 a 13). She acknowledges "[t]here is admittedly very little testimony as to [these] impairments." *Id*. at 14.

To be considered severe, an impairment must significantly limit an individual's physical or mental ability to perform basic work activities. 20 C.F.R. § 416.922. An impairment is not severe if it is a slight abnormality or combination of slight abnormalities that have no more than a minimal effect on the ability to do basic work activities. *Kirby v.*

*Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). The claimant bears the burden of proving the severity of an impairment or combination of impairments. *Id.* at 708 (although the requirement is not "onerous," it is not a "toothless standard"). Once the ALJ identifies a severe impairment and proceeds past step two, the labeling of an impairment as severe or non-severe has no legal significance; the entire medical record provides the basis for the determinations at steps three and four. *See* 20 C.F.R. § 416.945(a)(2); Social Security Ruling (SSR) 96-8p (the ALJ will consider all medically determinable impairments, even those that are non-severe, when assessing RFC).

The ALJ found that Mensinger had two severe physical impairments: facet joint arthritis in her lumbar spine and obesity. (Tr. at 177). The ALJ further noted the following non-severe physical impairments: diabetes mellitus, acute pulmonary embolism in December 2023, hypertension, and obstructive sleep apnea. *Id.* The ALJ concluded that Mensinger's diabetes and pulmonary embolism were stable and well controlled with medication. *Id.*[4] Although Mensinger claims the ALJ should have discussed diabetic polyneuropathy and DVT at step two, "precedent indicates that the failure to list a specific impairment at step two is not an error unless the impairment is 'separate and apart' from the other listed impairments." *Gregory v. Comm'r, Soc. Sec. Admin.*, 742 F. App'x 152, 156 (8th Cir. 2018) (citing *Gragg v. Astrue*, 615 F.3d 932, 938–39 (8th Cir. 2010)).

[4] Mensinger was seen at UAMS on January 2, 2025. (Tr. at 1007). Notes from that visit indicate that Mensinger's pulmonary embolism was provoked by oral contraceptive pills, smoking, and obesity. *Id.* at 1009. Mensinger was taken off of Eliquis, a medication to treat pulmonary embolism, after she discontinued birth-control pills; smoking cessation was recommended. *Id.* During the hearing on February 26, 2025, Mensinger testified that she was still smoking and had gained weight. *Id.* at 196.

Accordingly, for Mensinger's argument to succeed, she must show that diabetic polyneuropathy and DVT are impairments that are "separate and apart" from her diabetes and pulmonary embolism. But the record does not support that diabetic polyneuropathy was an impairment separate and apart from Mensinger's diabetes or that DVT was an impairment separate and apart from Mensinger's pulmonary embolism. For instance, although there is some reference—mainly prior to the date of alleged disability—to foot pain and leg swelling in the medical record, there is little indication that Mensinger regularly sought treatment during the disability period for diabetic polyneuropathy. *Id*. at 580, 754, 756, 758–59, 760, 762–63, 764.

The record also establishes that Mensinger's DVT was diagnosed during treatment for her dual pulmonary embolism, *id*. at 674, and that she has since discontinued any treatment for either condition. *Id*. at 1009. Notwithstanding, even assuming diabetic polyneuropathy and DVT were separate and apart from Mensinger's diabetes and pulmonary embolism, any error in not finding an impairment severe at step two was cured when the ALJ considered all of Mensinger's medically-determinable impairments, including those that were not severe, when determining her RFC. *Id*. at 176. The Court finds no grounds for reversal on this point.

**3. The ALJ properly evaluated Mensinger's subjective complaints of pain.**

Mensinger next argues that the ALJ failed to comply with *Polaski*, 739 F.2d at 1320, and instead, discounted her subjective complaints as unsupported by the objective medical records. (Doc. 7 at 15). Mensinger maintains that the ALJ offered no basis for rejecting her

complaints of physical pain and offered only an 11-year-old psychological IQ test for discounting her mental complaints. *Id*.

When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019); *see also Polaski*, 739 F.2d at 1322; SSR 16-3p (codifying *Polaski* factors). An ALJ need not explicitly discuss each factor. *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011). "[T]he duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the claimant's complaints of pain . . . and whether the evidence so contradicts the claimant's subjective complaints that the ALJ could discount his or her testimony as not credible." *Masterson v. Barnhart*, 363 F.3d 731, 738-739 (8th Cir. 2004). Where an ALJ considers the relevant factors and then discredits a claimant's complaints for good reason, the decision should be upheld. *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001).

In this case, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p." (Tr. at 180). The ALJ found that Mensinger's "statements concerning the intensity, persistence and limited effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id*. As to Mensinger's claims of

physically limiting pain, Mensinger testified that she was unable to work due to back pain and that she could not lift heavy weights, sit or stand for prolonged periods, or perform housework. *Id*. On January 2, 2025, however, despite reporting chronic back pain for the past year, Mensinger also reported that she had been prescribed gabapentin and that it managed her symptoms. *Id*. at 181, 1025. Her examination revealed normal strength and tone in her extremities. *Id*. at 1025. The ALJ noted that a lumbar x-ray showed "lumbarized S1 vertebra"; minimal hypertrophic changes at L4-L5, L5-S1, and S1-S2; relatively preserved disc heights; and no acute vertebral body abnormalities. *Id*. at 181, 1058.[5] At a follow-up examination on January 21, 2025, Mensinger's back pain was listed as "stable and well controlled." *Id*. at 1022. The ALJ found that, even considering Mensinger's obesity, "which would be expected to significantly limit her postural capabilities," he could not find that she was limited to less than light work with postural limitations. *Id*. at 183. Ultimately, the ALJ found that there was "little evidence of back pain" in Mensinger's record to support her claim of disabling pain. *Id*.

Turning to Mensinger's mental impairments, the ALJ acknowledged that Mensinger engaged consistently in mental-health counseling; however, the ALJ also noted that Mensinger's complaints were often of "situational stressors," her mental-status examinations were "essentially normal," and she had worked for years prior to the alleged date of disability despite "allegations of lifelong cognitive difficulties." (Tr. at 183–84).

---

[5] An MRI performed in June 2024 (and submitted to the Appeals Council as a supplemental record) showed "[n]o significant spinal canal or foraminal stenosis" and only "[m]ild facet arthropathy at the L4-5 and L5-S1 levels." (Tr. at 162).

The ALJ found that, throughout Mensinger's mental-health record, she exhibited normal grooming and hygiene, a calm and cooperative attitude, normal speech, intact short-term and long-term memory, and normal concentration. *Id*. at 182. The ALJ further noted that Mensinger "underwent a psychological consultative examination" in May 2014 where "she complained of a learning disability." *Id*. at 181. However, although Mensinger's test results indicated mild intellectual disability, she was "found to be uncooperative during intelligence testing," and the test was invalidated. *Id*.[6] The ALJ also acknowledged that Mensinger was hospitalized in November 2023 for four days due to depression and suicidal ideation. *Id*. at 182. At the time of her discharge, "she exhibited euthymic mood, as well as calm and cooperative behavior, and she denied depression, irritability, feelings of worthlessness, hopelessness, or guilt, anhedonia, hostility, suicidal ideations, excess worry, panic attacks, and hallucinations." *Id*. Most notably, despite repeated efforts, Mensinger failed to attend at least two scheduled consultative mental examinations. *Id*. at 182, 216.

Under these circumstances, this Court is satisfied that the ALJ provided good reasons for rejecting Mensinger's claims of disabling pain. The ALJ conducted a thorough review of the record and pointed out inconsistencies between the medical evidence and Mensinger's complaints.

[6] Mensinger's full scale IQ was 58. (Tr. at 568). "However, under the circumstances [the psychologist performing the test does] not believe the patient's scores can be considered valid. . . . she would have scored higher if it had been possible to enlist her full cooperation in the test procedure." *Id*.

### 4. The ALJ did not err in determining Mensinger's RFC.

In her final argument, Mensinger claims that the ALJ "erred in concluding that Plaintiff could engage in light/unskilled work when such a finding is supported by neither the medical evidence nor the testimony." (Doc. 7 at 16). While Mensinger refers to the ALJ's discussion of Shelton's medical opinion in her argument, *id*. at 16–17, it is unclear if Mensinger is claiming that the ALJ erred in evaluating that opinion. Mensinger also repeats her claim that the ALJ could not determine Mensinger's RFC without medical opinion evidence. *Id*. at 18.

To the extent that Mensinger is retreading ground on the issue of whether the ALJ needed medical-opinion evidence to formulate the RFC, this Court—based on recent Eighth Circuit precedent—has already rejected that argument. As for the ALJ's assessment of Shelton's medical opinion, Mensinger fails to make a specific argument as to how the ALJ erred—*e.g.*, whether on grounds of supportability or consistency. In fact, it seems that Mensinger simply disagrees with the ALJ's assessment of the evidence supporting the RFC. The issue before the Court, however, is not whether substantial evidence supports Mensinger's claims, but whether it supports the ALJ's decision. *Pierce v. Kijakazi*, 22 F.4th 769, 771 (8th Cir. 2022). Having reviewed the entire record, this Court is convinced that there is ample evidence in the record that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison*, 305 U.S. at 229); *see also Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004).

## IV. CONCLUSION

Upon careful review of the record, the Court finds that substantial evidence supports the Commissioner's decision that Mensinger was not disabled.

IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's decision be AFFIRMED.

2. Judgment be entered for the Defendant.

DATED this 17th day of November, 2026.

UNITED STATES MAGISTRATE JUDGE